Our first case for argument today is 20-1976, Implicit v. NetScout Systems. Mr. Romwell, please proceed. Good morning, your honors. May it please the court. Jason Romwell on behalf of Implicit. The district court here erred in construing two critical terms in the implicit patents. In each of those, claim construction errors independently requires vacating the jury's verdict of non-infringement. First, the district court erred in construing the sequence of two or more routines terms. Now this was not the first time the district courts had considered these terms. Indeed, the Northern District of California in the F-5 Networks II and F-5 Networks I case reached constructions of these terms that was substantially similar to the construction that Implicit proposed here. So what's the difference between the two? Because you spend a lot of time in your brief arguing something that strikes me a little different, which is that NetScout's non-infringement arguments aren't consistent with claim construction. But what actually is the difference and the consequences of the difference between your construction and theirs? Yes, Judge Prost. So the critical difference is that the construction the district court entered uses the term not selected from a set of arrangements that is created before receiving a first packet of the message. And this deviation from what the Northern District  that can and cannot be created before receiving the first packet of the message. What's the difference? The difference, literally the difference is that language, the not selected from a set of arrangements created before versus not identified, i.e. configured prior to receiving the first packet of the message. That's just a bunch of words. You still haven't answered the question. What is the difference? What can exist in your construction, what can exist in their construction that differs from what can exist in your construction? Yes. Use like real words that we understand. Yes, Judge Moore. So the difference is that under the district court's construction, it precluded the existence of software, of the source code that invokes those routines. Or at least it allowed NETSCOUT to argue that the source code itself could not exist prior to receiving the first packet of the message. But you didn't object to the argument at the trial, right? There wasn't an objection, Your Honor, because the district court's construction allowed for NETSCOUT to make this argument. And that is, in fact, the core of our argument here is that the construction should not have permitted that. The construction that Implicit advocated for, which was the same construction entered into by the Northern District of California, recognized that Implicit never disclaimed the pre-existence of certain pre-configuration information, like the routines themselves or the source code to invoke those routines, the possible ways to invoke those routines. Why do you think the district court's construction, what about its language, makes it clear that it can't, there can't be any source code that invokes those routines or anything like that in existence? So to be clear, Your Honor, the problem with the district court's claim construction here was that it allowed for the non-infringement argument that NETSCOUT made. It allowed NETSCOUT to argue that the source code itself, if the source code itself that invoked the routines was created before receiving a first packet of the message, that that was a valid non-infringement argument. I understand they argued that, and Judge Dyke pointed out that you didn't object to it, but I don't understand how the district court's construction is wrong in that regard. What in the precise language from the district court's construction is wrong? It doesn't say anything about source code. It doesn't expressly say source code. That is correct, Your Honor. It is the selected from a set of arrangements created before in the confusion about what it is that can and cannot be created before. Implicit's proposed construction did not use this created before language, and neither did the Northern District of California use that language, and in fact, we know that the district court viewed this as allowing for NETSCOUT to make the argument that the preexistence of its source code could in fact be a data structure. We see that in APPX 47, where the district court said the court is not convinced by Implicit's argument that the source code is not a data structure, and under the construction entered by the Northern District of California that Implicit proposed here, that construction recognized or allowed for the existence of certain pre-configuration information, and that was the opening that allowed NETSCOUT to make an argument that the source code itself is the path data structure. Well, how do you contend with the prosecution history? Because my difficulty is I don't fully understand how the district court's adopted construction isn't almost verbatim what your client argued during the prosecution to distinguish its invention from Mossberger. So, there is a distinction, Your Honor, and in all of our statements regarding Mossberger to the Patent Office, Implicit was clear that what was being disclaimed was the preexisting path data structure, the actual path structure. Nowhere did Implicit expressly disclaim the preexistence of the routines, or the source code or software to invoke those routines, or the possible ways that those routines could be connected together in a possible path data structure. It was focused specifically on the actual path structure, and considering that same prosecution history, the Northern District of California reached the same conclusion and said that. It's sort of irrelevant what they said. This is a question of law for us to decide. It is, Your Honor. But I don't see how the district court's, the district court's construction doesn't say anything, again, about source code, or paths, or anything else. So, and likewise, your construction doesn't say anything about source code, or paths, or anything else. It seems like neither construction is quite directed to the problem that you're raising now, but I still struggle to see how the district court's adopted construction is distinguishable from what you argued in Mossberger that ought to create some sort of limit on what you can say these claims extend to. And again, Your Honor, it's that, in our view, the district court's construction, the use of the created before language allowed NETSCOUT to argue that it was, in fact, a source code. But you're saying his construction allowed them to argue something. I don't see how his construction specifically addresses the issue you're saying, which then means you had to object. At trial, if they breached, if you thought his construction allowed for that, I mean, I guess I don't see it. I don't see his construction speaking directly to the issue that you're talking about, which means you should have asked for further elaboration and clarification. Or at trial, you should have objected and said this is inconsistent with your construction. And Your Honor, I understand the point. I think in APPX 47, where we see in the post-trial briefing, the district court recognizing that under its construction, the source code itself could be a data structure. But where did you object to the construction before trial? Your Honor, when implicit received the district court's claim construction, it was entered by the magistrate judge and we objected to that construction. But where did you raise this point that you're raising now about the construction? It was raised in the post-trial briefing, certainly. That's not pre-trial. So you're unable to show me where you objected to this construction pre-trial? Not right now, Your Honor. I don't believe so. Moving on, if I might, to the other. Likewise, just to be clear, even though the district court construction spoke not at all to source code and the issue that you're saying is troubling, the first time I see anything about source code, the only thing I see about it is APPX 47, which you pointed me to. But that's the district court's decision on JMAL, right? It is, Your Honor. So the first time he said anything at all about whether or not source code was or was not excluded from his construction, which does not address source code, is after everything is over. That's correct, Your Honor. That's the first time it's addressed. Since your position is that if you win on either one of your claim construction challenges, you should get a new trial, why don't you move on to execute and convert? Yes, Your Honor. So the district court also erred because during these two terms by importing an outermost header limitation. And the claim language here in the 683 patent is instructive. The asserted claims do not contain and express outermost header limitation, but certain dependent claims and another independent claim do contain that specific limitation. And we think that this differentiation shows that not all converting requires. Why isn't there support for the construction and the prosecution? Your Honor, I believe Your Honor's referring to the DeCasper reference in the statements implicit made regarding DeCasper. DeCasper was a limited system that only focused on the IP layer. And so DeCasper had no ability to look beyond that. We've had plenty of cases saying it doesn't make any difference whether you had to make particular statements in the prosecution history. The fact is if you did make them, even if they were unnecessary, they're binding. Your Honor, we don't believe that any of the statements made by implicit rise to the level of requiring an importation of an outermost header limitation in contravention of this claim differentiation. We pointed out that in DeCasper, the outermost header's always IP because that's what DeCasper's solely focused on, the IP layer. So it only has the ability to process packets of that outermost header being IP. But if the claim systems are different, they're able to diverse the protocol stack and consider different layers. So. Yeah, but your problem is you made broader statements. Your Honor, even if the statements made regarding DeCasper would warrant importing an outermost header limitation, there was no basis for the district court excluding the single copy embodiment. The specification specifically discloses an embodiment where a reference can move from one header to the other. And I see that I'm into my rebuttal time. Okay, we'll save the rest for you, Mr. Romo. Thank you, Your Honor. Eric Burrush. Good morning, Your Honors. May it please the court. My name is Eric Burrush. I represent NETSCOUT in this appeal as well as at the district court. I'm gonna begin with the sequence of routines. During the briefing from appellant in this matter, the focus was primarily on the language in the claim data structure. Whereas at the district court, in addition to the patent office during reexamination proceedings, the focus has always been on the sequence of routines claim limitation. I wanna begin by pointing out that the district court's claim construction focused on an ordered arrangement of two or more software routines that was not selected from a set of arrangements created before receiving a first packet of a message. Implicit's construction also focused on an ordered arrangement of two or more software routines. The only difference between implicit's construction and the district court's construction is whether the concept of identifying this ordered arrangement needed to occur before or whether the ordered arrangement needed to be created before. That was the only difference between implicit's construction and the district court's construction and on that issue, as we set out in the briefs, the question is not what a data structure or when a data structure may be created or not created, it is always focused on this concept of an ordered arrangement. We walked through with the district court and as well with this court in our brief in chief, substantial evidence from the prosecution history distinguishing the Mossberger reference. And I don't wanna belabor the point unless there are questions from the court to answer but on page 20 of our brief in chief, which is document 30, we begin to just lay out statement after statement distinguishing the Mossberger reference on the basis of whether the paths, the sequence of routines that were available to the system were pre-created and fixed or whether they are created after a message is received and begin to be processed. So the question that was before the patent office, the distinction over Mossberger is very, very clear and it has always been focused on when the sequence of routines or the ordered arrangement of routines comes into existence. The district court made no error whatsoever in walking through, again, at page 21 of our brief, at page 22 of our brief, at page 23,  where if you look at the chart between the re-examination statements made by implicit and the district court's claim construction, they are nearly verbatim. The language used by the district court and the language used by implicit during the re-examination are nearly verbatim. There is simply no error in the district court's claim construction on the sequence of routines limitation. I'd be happy to address any questions on that limitation before I move on. Moving on to the execute and convert limitations. Your honors, the issue there, while it's presented as execute and convert, the question presented to the district court is how do we understand or how do we explain to the jury what a format of a packet is? And- Can you just get to just the question of where, do you agree that there's a claim differentiation issue that we should just overlook it, or do you think there's no claim differentiation? Oh, there is absolutely no claim differentiation issue. And that issue is, again, put directly to the district court and fully analyzed. The issue there is, again, convert the format of a packet. The independent claims talk about converting from an input format to an output format, or from one format to another format in other claims. So you're converting the format of the packet. The question was, what was the format? How do you explain that? And the district court said, well, you look at the outermost header of the packet. What claim 20, the claim that is the basis for the different claim differentiation argument, what it goes to is how one would go about converting, okay? So you convert in the independent claim. Claim 20 explains how you would convert in one embodiment. And in that embodiment in claim 20, the methodology or the mode for performing the conversion is to remove the outermost header of the packet. The reason there is no claim differentiation there is because there are multiple other ways you could go about converting from one format to another format. You could add an outermost header. You could go in and change just by manipulating the data within the outermost header to change the outermost header. There are multiple other modes of conversion of an outermost header of a packet which defines the packet's format. So there is no claim differentiation because it's not the only way of doing the conversion. There is multiple other ways that are reflected in the independent claims or covered by the independent claims. And that is exactly, by the way, what the district court found and was fully correct in doing so. On the issue of how we define the packet format, again, we started with extrinsic evidence, and I'm not gonna start my argument there, but the general usage in the industry is when you have a packet that has sometimes three, sometimes four, five different protocols. You'll have Ethernet, IP, UDP, TCP, HTTP. You have all these different protocols that can be reflected in a single packet. What's the format of that packet? Well, you can only have one format at a time. The industry usage shows that you look to the outermost. What's the first one on the packet? And that becomes the format of that packet. The prosecution history, in particular, reflected a number of statements from the patentee that just accepted that same industry usage. It's the outermost header. We have statements from one of Implicit's experts submitted during the reexamination proceeding saying, and this is at appendix 3592, only the structure of the outermost header determines whether a packet is in an IPv4, IP version four format, or whether it employs some other format. It is always looking to the outermost header. So again, when the district court was presented  as to what is meant by the format of a packet, the district court appropriately looked to the intrinsic evidence first. Well, you could process the packet also by using a pointer instead of scripting the outermost header until you got to the TCP protocol, right? You can parse a packet, you can inspect a packet by simply looking at it as it goes through the system, processing it up the stack, as Implicit refers to. But when you're speaking of converting from one format to another format, it requires more than simply looking at the headers. You need to do something to change the packet. That's the nature of a conversion. And again, the district court didn't limit the modes of conversion in any way, shape, or form. There was in fact no construction on the term conversion. It was left to the jury to decide how a conversion might take place. But the district court simply recognized that a packet format is its outermost header. That was the construction from the court, and that was what was presented to the jury. And it is a correct construction, both in terms of the intrinsic evidence and as well the consistent extrinsic evidence. Again, if there are further questions on that particular term, I'd be happy to address them. Okay, the remaining issue on the Appeal-in-Chief, Appellant's Appeal, is respect to the legal standard if the court were to find that one construction is incorrect and the other construction is correct. I think it was an interesting discussion in the briefing. I think the case law is an interesting read. Of the three cases that were presented to the court predominantly, Network One, AVID, and SSL Services, I believe the only case among those three to address a situation where there were two non-infringement issues presented to the jury in a context where, again, only one would be reversed and the other would be affirmed. SSL is the only case to address that type of situation. The other cases, AVID and Network One, only had... We have plenty of cases that deal with it. They may not have been cited. There are a lot of cases dealing with the standard on what to do if a claim construction has been reversed, but I didn't find substantially more than what was cited in terms of if there is one affirmed and one reversed at that narrow situation. But, Your Honor, I totally defer to you if you know of other ones. I believe the upshot of SSL in that case law is that the burden remains with the appellant to demonstrate that the verdict is harmful, that there was prejudice if there was an error in a construction, and where you have a correct construction that is supported by substantial evidence with a jury verdict, the only way that that can be overturned by the appellant is if they can show that they presented substantial evidence under the correct instruction. I think what the court will see from reviewing even the evidence before it and the arguments before this court is that the evidence presented by implicit at trial was in the direction of what they wanted the construction to be. They presented evidence that there was a data structure created after arrival of a message. They did not present evidence that there was creation of an ordered arrangement of software routines, and they don't contend that here today. So, if that construction is affirmed, there is no evidence in the record to support that the jury could have reached any other decision than the one they reached on that correct construction. Therefore, in that scenario, the verdict would be affirmed even if the other construction on the convert and execute were found to require a reversal. And I believe the same is true in the opposite direction. And what are the best cases that you have that delineate the kind of thing you're saying to us today? It is SSL Services, Your Honor, which is cited in the briefs. I believe that is the closest case, and I believe the standards there are consistent with what I just described. Okay, and that leads me to my final point, which I will address briefly. We have a counter appeals on Judge Gilstrap's denial of our Section 285 fees motion. And I would just start by saying I understand that what we have moved for relief from this court on is a big ask in a discretionary Section 285 context. But I believe what the record shows, and it is fully presented to this court, the arguments and evidence are fully in front of this court. I believe what the evidence shows is that there is an, I would say intentional, although intent is not part of the analysis, but a decision was made that even though the construction of sequence of routines from implicit was rejected by the district court, that they continued to present evidence about this creation of a- Did you object to the evidence? What's that? Did you object to the evidence? We did, Your Honor. And what did the district court rule? The district court denied our objection. Right, so he thought it was relevant. He did. And you'd like me now to conclude that all of that evidence wasn't relevant, and that's why you should get attorney's fees? Because they presented evidence? Did you move on summary judgment in this case? We did on the convert and execute limitations, Your Honor. And did you win? We did not. No, so that went to trial. Did they present evidence there that was troubling and problematic? In the same ilk, yes. And did you object to that evidence? We did. And did the district court deny that objection? He did, Your Honor. Okay, so then did you move for J-Mall? We did. Okay, and did the district court deny that as well and say, no, there are fact issues here that go to a jury? Yes, Your Honor. I find cases like this tremendously frustrating. You had a big victory. You've got a strong defense on the merits. When you throw in a nonsense argument, which this is, this appeal of attorney's fees, when you start it with it's a big ask, it's a big and stupid choice for you to have appealed that issue. There is no merit to your attorney's fees request. And it is troubling that you would waste the court's time and challenge the district court's sound judgment on this issue. But feel free to continue. Given Your Honor's comments, I would simply reserve the rest of my time, and I appreciate your input, Your Honor. Thank you. Reserve the rest of your time? In case they address this question. Oh, okay, so you want to argue about attorney's fees again. It's unlikely that that will be the case. Your Honor, just going back to the client construction error on the execute and convert terms. The specification, regardless of whether or not the district court erred in importing an ad hominis header limitation, the specification is clear at column 14 that there is a single copy embodiment. And this embodiment expressly refers to moving a reference in the context of conversion routines. And regardless of whether the district court erred in importing the ad hominis header limitation, it erred in excluding the single copy embodiment in the notion of moving a reference within a routine. And in fact, NetScout relied on this exclusion to argue that its pointer-based systems could not infringe. Right, well, I mean, there are lots of embodiments. That single embodiment is just one. People often draft claims that don't extend to all their embodiments. And as in this case, they sometimes draft very broad claims and then have to narrow them throughout prosecution to avoid prior art. So why should every embodiment necessarily be included in every claim, which is kind of what your argument right now is? Well, Your Honor, even if we take the notion that the statements made about De Casper require an outermost header limitation. We disagree, but let's take that notion. There's nothing in the statements regarding De Casper that exclude moving a reference or using a reference to define what that outermost header could be. And the specification in the single copy embodiment refers specifically to how a reference can be used during this process as part of the conversion routines. So the district court, in reaching its construction, said my construction expressly excludes the notion of merely moving a reference pointer to define what the outermost header of the limitation is, outermost header of the packet is. And NETSCOUT relied on that exclusion to argue that its pointer-based systems did not infringe, that they were simply moving the header. NETSCOUT were implicit presented evidence that that's not what was occurring. The pointers were actually pulling down a new representation of the packet where it was the outermost header structure. But implicit, NETSCOUT would not have had this argument before the district court's exclusion of this embodiment. So what you addressed was 50% of my question, right? 50% of my question was what happens like when you limit things during prosecution history. The other 50% of my question is why is it that you think that every claim must include every embodiment? That's not the case. We agree, Your Honor, it's not the case. And apologies for not addressing that part of your question. No, I wove them together. So go ahead. So if we look at the claim language, removing an outermost header of a packet is certainly one way to convert a packet. And we see that in the dependent claims that include that. But removing an outermost header, removing or outermost header is not included in the claims at issue here. So that is not the only way to convert a packet. It doesn't necessarily have to be focused on what the outermost header is of a drawing of a packet. And it doesn't necessarily have to be removing that outermost header. So it's not just that the claims at issue here don't include the term removing. They also don't include the term outermost header. And addressing the Networks 1 case that my friend brought up, we believe that Networks 1 is the most applicable case here. And in that case, there were two disputed claim constructions. This court found that one of them was correct, but one of them was incorrect, and found that the defendant there had relied specifically on the incorrect construction for its non-infringement arguments. And because the verdict was a general verdict form, this court vacated and remanded for the district court to properly instruct the jury. And we believe that the same approach should be taken here, given that NETSCOUT relied on at least one improper construction. And I see that my time is up if your honors have no further questions. Thank you, Mr. Romwell. And since the cross-appeal wasn't addressed, that ends this case. I thank both counsel. This case is taken under submission.